**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MATTHEW STANEK, SANDRA STANEK,
and BOGDAN STANEK
       Plaintiffs,

v.

SAINT CHARLES COMMUNITY UNIT
SCHOOL DIST NO. 303, *et al.,*
       Defendants.

Case No. 13-CV-3106

Judge  Jorge L. Alonso

## MEMORANDUM OPINION AND ORDER

Plaintiffs Matthew, Sandra, and Bogdon Stanek have brought this action against St. Charles Community School District #303 and several teachers and school administrators. Before the Court is Defendants' Motion to Strike Plaintiffs' Third Amended Complaint and Class Allegations [dkt 121], and Defendants Julie Steston and Rory Pine's Motion to Dismiss [dkt 149]. For the reasons that follow, the motions are granted. Defendants Steston and Pine are dismissed with prejudice and the Third Amended Complaint is stricken. Plaintiffs are given until January 5, 2018 to file an amended complaint consistent with this opinion.

## BACKGROUND

Although still at the pleadings stage, this case has a long history which has already been the subject of multiple court decisions, and is repeated here only in pertinent part. Plaintiff Mathew Stanek is autistic. He attended St. Charles High School from 2009-2013, during which time he received special education services. According to Plaintiffs, Matthew excelled when he received adequate supportive services. During his junior year of high school however, Defendants failed to provide adequate services, discriminated against Matthew based on his

disability, and retaliated against Plaintiffs for their advocacy on his behalf. Plaintiffs allege that Matthew and his parents and co-plaintiffs Sandra and Bogdon Stanek suffered as a result.

On April 1, 2013, Plaintiffs filed a state court complaint against the St. Charles Community Unit School District and 12 individual defendants which was thereafter removed to federal court. [Dkt 1.] In August 2013, the Court found Plaintiffs' complaint "impossible to decipher," as it was written largely in narrative form, referred to many federal and state laws, and did not make clear which Plaintiffs were asserting which claims against which Defendants. [Dkt 21.] Plaintiffs were given leave to amend their complaint in accordance with Federal Rules of Civil Procedure 8, 10, and 11, and were advised of the availability of free legal assistance through the District Court's *Pro Se* Assistance Program. [*Id.*]

Plaintiffs filed their First Amended Complaint in September 2013. [Dkt 25.] It was 20 single-spaced pages, and contained six counts. [*Id.*] After defendants' motion to dismiss was granted in its entirety, Plaintiffs successfully appealed to the Seventh Circuit, who in 2015 affirmed in part and reversed in part. [Dkt 70.] Specifically, the Seventh Circuit affirmed the district court's dismissal of Matthew Stanek's retaliation claim under the Rehabilitation Act and the ADA, all of Plaintiffs' official capacity claims against the individual defendants except for Superintendent Donald Scholmann, the individual capacity claims under the Rehabilitation Act and the ADA, and any further claims not addressed specifically in the decision. [*Id.*] In all other respects, the dismissal was vacated and the case was returned to the district court. [*Id.*] Defendants then answered the complaint, and Settlement Assistance Counsel was appointed. [Dkt 77, 89.] After an unsuccessful settlement conference with the Magistrate Judge, Plaintiffs were directed to file an amended complaint consistent with the Seventh Circuit's decision. [Dkt 95, 96.] Plaintiffs' second amended complaint more than quadrupled in size, to 88 pages, and

contained five counts. [Dkt 97.] Defendants moved to strike the complaint as inconsistent with the Seventh Circuit's ruling, and violative of Rule 8's requirement of a "short and plain" statement of the claims. [Dkt 98.] The Court gave Plaintiffs leave to file a third amended complaint ("TAC"), which they did in May 2016. [Dkt 101.] The TAC swelled to 203 pages, containing seven counts over 631 paragraphs.

The TAC alleges violations of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Illinois School Student Records Act, 105 ILCS 10/1 *et seq.* It attempts to add four new defendants, the Illinois State Board of Education ("ISBE"), State Superintendent Tony Smith, Rory Pine, who is alleged to have been Matthew's substitute teacher during the 2011-12 school year, and Julie Stetson, who is alleged to have been Matthew's special education case manager for a portion of that same year. [*Id.*] It also attempts to add class claims on behalf of all students with disabilities, present and future, in District # 303. [*Id.*] ISBE and Smith moved to dismiss the TAC against them, which was granted in part and denied in part. [Dkt 161.] The Illinois Student Records Act claim was dismissed with prejudice as to both defendants, and as to Smith, the IDEA claim was dismissed with prejudice and the constitutional claims were dismissed without prejudice. [*Id.*]

Pending before the Court is Defendants Stetson and Pine's motion to dismiss on personal jurisdiction and timeliness grounds. [Dkt 149.] Also before the Court is Defendants' motion to strike the class allegations on the ground that Plaintiffs cannot not satisfy the threshold requirements of a class action, and to strike the TAC in its entirety because it does not contain a

short and plain statement of the claims as required by Rule 8 of the Federal Rules of Civil Procedure.  [Dkt 121.]

***Stetson & Pine's Motion to Dismiss***

Plaintiffs obtained a default against Defendants Stetson and Pine on December 12, 2016. [Dkt 133.]  On December 16, 2016, Stetson and Pine moved to vacate the default, which was granted on February 28, 2017.  [Dkt 161.]  While the motion was pending, Stetson and Pine also filed a motion to dismiss on the basis of Plaintiffs' failure to serve process in accordance with Rule 4 and on the expiration of the statute of limitations.  [Dkt 149.]

For the reasons set out in the Court's February 28, 2017 memorandum opinion vacating the default (which issued during the briefing on this motion), the Court determined that service on Stetson and Pine was not proper.  [*See* dkt 161.]  Plaintiffs' arguments notwithstanding, the defendants did not waive their challenge to defective service by first seeking to vacate the default; indeed they argued it at length in their motion to vacate and the Court relied on it in granting the motion.  [Dkt 137, 161.]  To waive a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits, or it must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking. *See Mobile Anesthesiologists, Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).   That is not the case here, where it has been clear from their first appearance that Stetson and Pine challenged the court's personal jurisdiction over them.  Filing their counsel's appearance and their motion to vacate the default based on lack of jurisdiction neither gave Plaintiffs an expectation they would defend the suit on the merits nor required court resources that would be wasted upon a finding that jurisdiction is lacking.

In resisting this conclusion, Plaintiffs mistakenly rely on *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394 (7th Cir. 1993), in which the Seventh Circuit affirmed the district court's finding of waiver against a defendant who first appeared to oppose entry of a default, and then filed a motion to dismiss. In *O'Brien*, however, the defendant failed to raise the jurisdictional defense in its motion to vacate, and it was upon this omission that the court found waiver. *See id.* at 1398-99. Far from omitting their objection here, Stetson and Pine premised their successful motion to vacate on their objection to the lack of service on them. [*See* dkt 137.]

Because Stetson and Pine were not properly served and have not waived their objection, the court may not exercise personal jurisdiction over them. *See U.S. v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008). "When a plaintiff fails to serve process within the period of time prescribed by the federal rules, Rule 4(m) requires the district court to dismiss the complaint without prejudice." *Id.* at 501. A dismissal with prejudice is appropriate, however, where the statute of limitations has expired on the plaintiff's claims. *See Cardenas v. City of Chi.*, 646 F.3d 1001, 1007-08 (7th Cir. 2011). The court thus turns to whether the dismissal should be with prejudice.

There is no dispute that the statute of limitations expired on Plaintiffs' claims before the filing of the TAC and well before Stetson and Pine appeared, but Plaintiffs assert their claims relate back to the timely filing of their first complaint. [Dkt 150 at 5-7; dkt 155 at 12.] [1] According to Stetson and Pine, relation back does not apply because Plaintiffs did not make a mistake in failing to timely name them, and because neither were mentioned in any timely filed complaint, and neither received the complaint and summons within the time prescribed by the Rules. They also emphasize the prejudice to their ability to defend on the merits by being

---

[1] As to the state law claims that tolled until Matthew's 18th birthday, the limitations period expired September 13, 2013; as to the federal law claims that tolled until Matthew's 18th birthday, the limitations period expired September 13, 2014.

brought into this action years after the underlying events, especially given the case's long procedural history. Plaintiffs, on the other hand, insist that relation back saves their claims, arguing that their failure to name Stetson and Pine resulted from Plaintiffs' mistaken belief that School District # 303 was responsible for their actions given that both held temporary roles, and because Stetson and Pine knew or should have known that they would have been named in the original complaint but for Plaintiffs' mistake. Service within the time prescribed is not required in order to apply relation back, Plaintiffs add, but rather, only that defendants received notice of the action. Because Stetson and Pine knew of the lawsuit, either from the news media, or from the fact that District #303 was timely sued and is represented by the same counsel as they are now too, Plaintiffs say, their claims against them relate back to their timely filed original complaint.

Federal Rule of Civil Procedure 15(c) conditions relation back on three fundamental prerequisites: (1) the amended complaint must arise out of the same conduct, transaction, or occurrence described in the original pleading; (2) within the period for serving summons and complaint the party to be brought in by amendment must have received notice of the lawsuit such that the party would not be prejudiced in defending on the merits; and (3) the party to be bought in must have or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity. *See* Fed. R. Civ. P. 15(c)(1). In considering whether relation back is appropriate, the district court must only ask two questions: "first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's

discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsport Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011).

While there is no question that the claims against Stetson and Pine arise out of the same conduct, transaction, or occurrence described in the original complaint, Plaintiffs have not established the other required elements to enable relation back. First, while Plaintiffs are correct that it need not be shown that Stetson and Pine received the summons and complaint in a timely fashion, it must be shown that Stetson and Pine had notice of the action such that they would not be prejudiced in defending on the merits at this late date. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). Notably, Plaintiffs do not argue that Stetson and Pine had actual knowledge of the suit, but only that their employer had knowledge, that their employer's counsel had knowledge, and that it was in the news. Plaintiffs cite *Joseph* as support for their argument that the knowledge of District #303 is somehow imputed to Stetson, who is alleged to have been a substitute teacher of Matthew's during 2011-12, and to Pine, who is alleged to have briefly been a special education case manager during the same school year. But the imputation of knowledge from an employer to an employee was not at issue in *Joseph*; instead, the court considered the knowledge of related and similarly named corporations, and the knowledge possessed by a supervisory employee of still a third affiliate who was a considered a de facto employee of the intended defendant. *See Joseph,* 638 F.3d at 560-61.[2] The facts are simply incomparable here.

---

[2] Notably, unlike with Plaintiffs' tardy naming of ISBE and its superintendent Smith for whom the court applied relation back, Plaintiffs do not argue that they ever gave Stetson and Pine reason to believe they intended to sue them, or that their failure to do so is in any way attributable to their *pro se* status. Unlike with ISBE and Smith, Plaintiffs do not suggest they issued a reservation of rights to Stetson or Pine, nor do they point to any specific communication that plausibly could have let Stetson and Pine know that but for Plaintiffs' mistake, they too would have been timely sued.

Plaintiffs' assertion that Stetson and Pine share an identity of interests with the original defendants also does not save the claims. "The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate." *Norton v. Int'l Harvester Co.*, 627 F.2d 18, 21 (7th Cir. 1980) (finding insufficient identity of interest as between two separate entities with no intercorporate relationship facing distinct claims against them) (internal quotations omitted). Even if an identity of interest theory could be applied to an employer/employee relationship, Plaintiffs' own authorities show it would not apply to non-managerial, non-highly ranked employees like Stetson and Pine. *See, e.g., Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 199 (3rd Cir. 2001) (declining to apply identity of interest theory to "staff level employee . . . with no administrative or supervisory duties").[3]

Likewise, that Stetson and Pine are now represented by the same counsel as their employer does not suggest they had constructive knowledge of this action, especially since their counsel only began representing them after they too received notice of the lawsuit. *See Davenport v. Dovgin*, 545 Fed Appx. 535, 539 (7th Cir. 2013) ("shared attorney" method of imputing knowledge in order to find timely notice of lawsuit inapplicable where attorney only began representing proposed defendant after untimely amendment). Similarly, even if Plaintiffs'

---

[3] The closest case for an application of an identity of interest theory would be if Plaintiffs only sought to apply it to their official capacity claims. But to the extent that Plaintiffs attempt to bring official capacity claims against Stetson and Pine, the claims would be redundant since Plaintiffs already have sued District #303. [*See* dkt 161 at 7 (citing *Lewis v Madigan*, 687 F. Supp. 2d 958, 973-974 (N.D. Ill. 2010).]

dispute regarding the provision of services to Matthew was covered in the local media, it would not establish knowledge of the sort contemplated under the Rule.

Plaintiffs argue they intended to sue all of Matthew's teachers during his junior year except one, and that the newly added defendants should have known that from the allegations of Plaintiffs' timely filed complaint. But Plaintiffs have not established that the defendants they seek to add had knowledge of the lawsuit until they were brought into it years after the expiration of the limitation period. Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010).

Even if the court were to find Stetson and Pine had the requisite knowledge of the action, it is not clear that Plaintiffs' decision not to name them reflects the sort of mistake contemplated under the Rule. Plaintiffs say they did not name Stetson and Pine because they believed that as their employer, the School District would be liable for claims against them, but this argument is belied by their naming of many other teachers and another case manager in their timely filed complaint. Plaintiffs liken their purported mistake here to the one at issue in *Joseph*, where the plaintiff named one corporation on a contract claim when the contracting party was actually a related, similarly named corporation that shared office space and personnel with the one initially named. But that is unlike the circumstances here. As the Supreme Court made clear, "[m]aking a deliberate choice to sue one party over another while understanding the factual and legal differences between the two parties may be the antithesis of making a mistake concerning the proper party's identity." *Krupski*, 560 U.S. at 549.

Given their *pro se* status, however, it might be plausible that Plaintiffs failed to appreciate the roles of Stetson and Pine in a way contemplated by the courts in *Joseph* and *Krupski*. Even if that were so, there is no indication that Stetson and Pine knew or should have known of the action, let alone that Plaintiffs were mistaken in not suing them as well. "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose – unless it should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Joseph*, 638 F.3d at 560.

An additional factor counsels against relation back. Plaintiffs argue that Stetson and Pine could not possibly be surprised by their tardy inclusion as defendants "given their own wrong action against the Plaintiffs." [Dkt 155 at 13.] This is a position unsupported in the law, and indeed, as yet unsupported by the record. There is as of yet no determination of wrongdoing. To the extent Plaintiffs only meant to argue that Stetson and Pine have knowledge of the underlying facts giving rise to this lawsuit because of their involvement in the acts complained of, it is enough to note that this much is true in any case where a plaintiff belatedly seeks to add a defendant who has some involvement in the underlying dispute. Moreover, as the Seventh Circuit made clear in *Joseph*, the longer the delay in amending the complaint, the likelier the new defendant is to have been placed at a disadvantage in the litigation. *See Joseph*, 638 F.3d at 560. Here, more than four years had passed since the events at issue and more than three years since the filing of the first complaint by the time Plaintiffs filed their TAC adding Stetson and Pine. By that time, there had been years of motion practice and an answer filed in this case, as well as an appeal to the Seventh Circuit. Given the deliberate choice to name some teachers and administrators and not others, the lack of any indication that Stetson and Pine had notice of the

action, and the prejudice imposed by the substantial passage of time, relation back of the tardy claims against Stetson and Pine would be inappropriate.

Because the Court lacks personal jurisdiction over Stetson and Pine due to the failure to serve them, and because any amended complaint would be beyond the statute of limitations and unsaved by the principle of relation back, Stetson and Pine's motion to dismiss with prejudice is granted.


### Defendants' Motion to Strike

The remaining defendants move to strike the class allegations of the TAC, and to strike the TAC in its entirety. Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, motions to strike are disfavored because they potentially serve only to delay. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "In some cases, however, a motion to strike removes unnecessary clutter from the case, and serve[s] to expedite, not delay." *Id.* "Despite the disfavored status of a Rule 12(f) motion, a court may properly strike matter when it has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008) (internal quotations omitted).

Insofar as the motion seeks to strike all class allegations, the Court considers the import of Rule 23 in addition to Rule 12. Rule 23(c)(1)(A) states that "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ.P. 23(c)(1)(A). "The rule's text plainly indicates

that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011) (court may deny class certification at "an early practicable time," even before plaintiff moves for class certification). Particularly when pleadings are facially defective and definitively establish that a class action cannot be maintained, the court may properly grant a motion to strike class allegations at the pleading stage. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014); *Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 WL 4962838 at * 1 (N.D. Ill. Nov. 30, 2010).

To maintain a class action, Plaintiff must identify a class and demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A plaintiff seeking class certification has the burden of proving the proposed class meets the four requirements. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Failure to satisfy even one of the elements precludes class certification. *Id.* Additionally, Plaintiffs must demonstrate that the proposed class meets one of the three conditions of Rule 23(b). Plaintiffs invoke Rule 23(b)(2) which requires them to show that the defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In their TAC, Plaintiffs propose that the class they seek to represent includes "themselves and all other present and future St Charles public schools students who are identified as students

with disabilities pursuant to the Individuals with Disabilities Education and Improvement Act of 204 ("IDEA"), Section 504, and Title II of ADA." [TAC ¶ 39.] Plaintiffs allege there are approximately 1,883 students with such a disability, "mostly identified, who are currently enrolled in St Charles public schools and students with disability who will enroll in the future." [*Id.* ¶ 40.] They seek to bring a class claim "for failure to timely and adequately implement IDEA and for discrimination against students with disability." [TAC ¶ 3.] They complain that District #303, its Board of Education, and the ISBE "have failed to ensure that Plaintiffs and the proposed class members are timely and adequately provided with accommodations necessary to have an equal access to a free appropriate public education (FAPE)." [*Id.* ¶ 42.]

Defendants move to strike the class allegations on the grounds that Plaintiffs fail to establish that there are common questions of law and fact, that Plaintiffs' claims are typical of those of the class, that Plaintiffs are proper representatives of the class, and that Plaintiffs have adequately defined the class. Plaintiffs oppose the motion, arguing that the class is adequately defined and adequately represented by them, that their claims are typical of the class, and that the class is bound together by a series of common questions of law and fact. Plaintiffs appear to have pared down their proposed class during briefing on the motion – to a proposed class of "at least 220 students . . . already identified by District 303 itself (based on ISBE FOIA records)." [Dkt 125 at 2.] Despite the broad allegations of the TAC, Plaintiffs also appear to have limited their asserted class claim to the issue of whether there was a *timely* implementation of services to eligible students with a disability. [*Id.*] Even under these more narrow allegations, certification of a class in this case would be improper.

At the threshold, Plaintiffs' class allegations suffer from a fundamental flaw. Although Plaintiffs may represent themselves *pro se*, they may not represent any other people. *See e.g.,*

*Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2015) (noting one *pro se* litigant cannot represent another); 28 U.S.C. § 1654 (allowing parties to "conduct their own cases personally or by counsel"); *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) ("A nonlawyer can't handle a case on behalf of anyone except himself."). "[I]t is *generally* not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative." *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015); *see also Goodvine v. Meisner*, 608 Fed. Appx. 415, 417 (7th Cir. 2015) (no abuse of discretion in denying class certification upon finding pro se plaintiffs "could not fairly represent the class interests because they were *pro se* (and had not made an effort to secure class counsel).").

In determining whether a class action might be certified, the court must find that the class representative can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A factor the court must consider in determining the adequacy of representation is the qualification and experience of the person conducting the litigation. "Competent representation is crucial because a judgment rendered in a class action suit for injunctive relief is binding on all members of the class." *Johnson v. Chicago Pub. Schs.*, No. 10-CV-4266, 2010 WL 2891629 at *2 (N.D. Ill. July 20, 2010). A layperson ordinarily does not possess the legal training and expertise necessary to protect the interests of a class, so courts are reluctant to certify a class represented by a pro se litigant. *Id.* at *2. The court similarly concludes it would be improper to do so here.

Plaintiffs' argument that Rule 23(g) requires the appointment of counsel for them is based on a misunderstanding of the Rule that has been soundly rejected by the Seventh Circuit. "[T]he purpose of Rule 23(g) is not to enable pro se plaintiffs to obtain recruited counsel in

conjunction with class certification; the purpose of the rule is to ensure that the *proposed* class counsel is adequate." *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (no error in district court's refusal to certify a pro se class or to appoint counsel) (citing Fed. R. Civ. P. 23 advisory committee's note to the 2003 amendments, and *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010)). Further, Plaintiffs have not moved for the assistance of counsel in this case, nor is it clear that recruitment would be warranted.

In any event, the Court further finds that maintaining a class action would not be appropriate given the claims. Plaintiffs' claims are not typical of the class they propose – indeed none of the Staneks would even be a member of the class they propose. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-349 (2011) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (Internal quotations omitted)).

Matthew Stanek is no longer a student of District #303, and his interests and any injuries are different than those of current and future District #303 students. Likewise, because he is no longer a District #303 student, his interests would not be affected by the injunctive relief Plaintiffs seek for the class. Plaintiffs argue at length that Matthew's graduation from District #303 does not moot his interest in the case but that is not the issue here. Although courts apply an "inherently transitory exception" to enable class certification where a plaintiff's circumstances change, the exception only applies when the proposed representative was a member of the class when certification as first sought. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) ("Some claims are so inherently transitory that the trial court will not

have had enough time to rule on a motion for class certification before the proposed representative's individual interest expires.")  Here, neither Matthew, nor his parents Sandra and Bogdon, were members of the proposed class at the time they first raised their proposed class claims.  Moreover, Plaintiffs do not complain in their TAC about the timing of Matthew's services or accommodations – the very element they argue holds together the claims of a class.

Another barrier to any class certification in this action is the lack of commonality.  To show commonality, Plaintiffs must demonstrate that the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350.  Superficial common questions, like whether each proposed class member suffered a violation of the same law, are not enough to satisfy Rule 23(a)(2) which essentially requires a plaintiff to demonstrate that the class members all "suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (internal quotation marks and citations omitted).

Plaintiffs argue that commonality is met by Defendants' "policy of not implementing timely services and accommodations," and "common questions of law regarding Defendants' violations of federal and state mandates, deprivation of FAPE [free and public education] to disabled students, and failure by State Defendants (ISBE) to adequately monitor St. Charles School District 303."  [Dkt 125 at 3.]   According to Plaintiffs, the unifying common injury is denial of a FAPE.  *Id*. at 5.   Complying with the IDEA's mandate to provide all disabled students with a free and public education, however, is "a complex and inherently child-specific undertaking." *Jamie S.*, 668 F.3d at 486.  Indeed, the Seventh Circuit vacated certification of a class where Plaintiffs also alleged a systemic failure to comply with IDEA as the unifying class injury, explaining that Plaintiffs' theory "completely misunderstands Rule 23(a)(2).  . . . To bring

individual IDEA claims together to litigate as a class, the plaintiffs must show that they share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jamie S.* at 497.

Here, resolution of whether District #303 failed to hire sufficient therapists to provide timely services would not resolve a central issue in the determination of Plaintiffs' proposed class claims as they say – even as limited in the briefing on the motion. As Defendants observe, several individualized assessments must be made before therapists are required. First, a student must be identified for evaluation under the IDEA's child find obligation. *See* 34 C.F.R. § 300.111(a)(1)(i); 23 Ill. Admin. Code § 226.100. Next, the local education agency must timely conduct an evaluation to determine if the student is eligible for special educations services and accommodations. *See* 34 C.F.R. § 300.301; 23 Ill. Admin. Code § 226.100. Then, an initial individualized education plan must be timely created identifying the services and accommodations that the student will receive. *See* 34 C.F.R. § 300.324; 23 Ill. Admin. Code § 226.220. Finally, the services and accommodations must be timely implemented for the student in accordance with his or her individualized education plan. 34 C.F.R. § 300.323(c)(2); 23 Ill. Admin. Code § 226.100.

While Plaintiffs correctly note that even a single common question will do, both the Supreme Court and the Seventh Circuit have explained that superficial common questions like whether each class member suffered a violation of the same law is not enough. *See Wal-Mart v. Dukes*, 564 U.S. 338, 350; *Jamie S.*, 668 F.3d at 497. Plaintiffs' allegations of too few therapists to timely implement services, especially when that claim does not appear to be one that particularly affected the named plaintiffs, does not support certification of a class under the circumstances presented here.

As to the remainder of the TAC, it too must be stricken. As mentioned above, Plaintiffs' TAC is 631 paragraphs set out over 203 pages. It contains seven counts against 16 defendants, two of whom are dismissed as discussed above, and two of whom were dismissed in large measure by the court's earlier decision. [*See* dkt 161.] All of the class allegations must be stricken. These factors alone suggest the cumbersome nature of the complaint. But even without these complications, the TAC fails to comply with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves two goals: it allows trial courts to speed a case to resolution and it allows defendants to capably respond to the allegations in the complaint. *See United States ex rel. Garst v. Lockheed–Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003).

While a minor amount of surplus material in a complaint is not enough to frustrate Rule 8's goals, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations are grounds for dismissal. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013). This rule is based on the Seventh Circuit's observation, which is directly applicable to this case, that a disjointed and prolix presentation "may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *United States ex rel. Garst,* 328 F.3d at 378 (affirming dismissal with prejudice third amended complaint which was excessively long, convoluted, and confusing). Although the court takes great care to view *pro se* pleadings liberally, this rationale nonetheless applies to a *pro se* complaint. *See, e.g., Griffin v. Milwaukee Cty.*, 369 Fed. Appx. 741, 743-44 (7th Cir. 2010) (affirming dismissal with prejudice where despite opportunity to cure deficiencies, pro se

plaintiffs' lengthy and disjointed complaint made it impossible for district court to identify the specific allegations against each defendant).

Plaintiffs fill the TAC with allegations about students other than Matthew, including pages of allegations about students who Plaintiffs say did not receive therapy services in accordance with the particular requirements of their unique Individualized Educational Programs, a student who Plaintiffs say did not receive the assistance of a qualified bilingual specialist, and a student with Asperger's disorder who Plaintiffs say was denied necessary services. They also include allegations about clustering of students with disabilities, and allegations that a former District #303 employee complained about improperly obtained special education funds. The TAC additionally includes the recitation (sometimes repeatedly) of countless conversations and exchanges of emails with Matthew's teachers and other school employees. Together, all of these allegations so weigh down the complaint that it fails to provide defendants with the requisite notice of Plaintiffs' claims. Further, its length, needless complexity, and inclusion of irrelevant material and repetitive material imposes an undue burden on the court, to the prejudice of other litigants who also seek its attention. *See Kadamovas*, 706 F.3d 844.

For these reasons, Plaintiffs' TAC is stricken. Plaintiffs have already filed four complaints in this action, and are given one last chance to file one that comports with the Federal Rules. Any amended complaint must state in *short and plain* terms the claims Plaintiffs make. It is not necessary to recite every exchange with every teacher or school administrator to state a claim. Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2009)). To crystallize the issues,

Plaintiffs must identify which claims are asserted against which defendant, and which plaintiff asserts them. Plaintiffs are warned that they may not attempt to resurrect any claims that this Court or the Court of Appeals has unequivocally stated fails to state a claim. Plaintiffs are also warned that although they are being given the opportunity to amend, it is for the purpose of allowing them to attempt to state cognizable claims against proper defendants. They *may not* add any new claims.

*Pro se* litigants are given more leeway than licensed attorneys when assessing their pleadings, but they still must adhere to the Federal Rules of Civil Procedure. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("[C]ourts are required to give liberal construction to pro se pleadings . . . [but] it is also well established that pro se litigants are not excused from compliance with procedural rules."). The essence of liberal construction is "to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). That is not the case here. Plaintiffs have been given numerous chances to state their claims against Defendants, and although they are now being given one more, they must comport with the Federal Rules. Plaintiffs are reminded that they may obtain free limited legal assistance by scheduling an appointment with the William J. Hibbler *Pro Se* Assistance Program, located at 219 South Dearborn, 20th floor, or by calling (312) 435-5691.

## CONCLUSION

For all of the above mentioned reasons, Defendants' Motion to Strike Plaintiffs' Third Amended Complaint and Class Allegations [dkt 121] and Defendants Julie Stetson and Rory Pine's Motion to Dismiss [149] are granted. Plaintiff is given leave until January 5, 2018 to file

an amended complaint consistent with this opinion.    Failure to do so will result in summary

dismissal of this case.  Status hearing remains set on December 7, 2017, at 9:30 a.m.


Date:  12/1/2017

_____
Jorge L. Alonso
United States District Judge