**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW STANEK** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 13 C 3106** |
| | ) | |
| **v.** | ) | **District Judge Jorge Alonso** |
| | ) | |
| **ST. CHARLES COMM. UNIT** | ) | **Magistrate Judge Jeffrey Cummings** |
| **SCHOOL DISTRICT # 303** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Matthew Stanek's motion for reconsideration of this Court's March 19, 2020 Order [Dckt. #375] and accompanying Memorandum Opinion and Order [Dckt. #376, *available at* 2020 WL 1304828 (N.D.Ill. March 19, 2020)], which granted in part and denied in part his motion for a protective order. Matthew also moves for leave to file an oversized 24-page memorandum of law in support of his reconsideration motion. The Court has reviewed Matthew's memorandum of law and grants him leave to file it.[1] Nonetheless, after consideration of Matthew's arguments, the Court denies his motion for reconsideration for the reasons stated below.

In its March 19, 2020 ruling, this Court granted in part and denied in part Matthew's motion for a protective order. In particular, the Court denied Matthew's request to force defendants to take his deposition by written questions under Federal Rule of Civil Procedure 31 rather than by oral examination as provided by Rule 30. (Dckt. ##375, 376). The Court also

---

[1] The Court grants Matthew leave to file his memorandum notwithstanding the fact that it devotes a number of pages towards an inappropriate rehash of arguments that were previously made and rejected by this Court. Plaintiffs should take note that the Court will more rigorously enforce Local Rule 7.1's 15-page limitation in the future, and they should not expect to be granted leave to file oversized motions or briefs unless they make a persuasive argument as to why the additional pages sought are necessary.

denied Matthew's request to bar the individual defendants from attending his deposition. (*Id.*). The Court did order that defendants should proceed with Matthew's oral deposition in a manner that will ensure that he is not subjected to extended periods of questioning and mitigate his anxiety by providing him with the opportunity to bring his emotional support dog to the deposition.

## I.     Analysis

As Matthew acknowledges, motions for reconsideration serve the limited function of correcting "manifest errors of law or fact" or to present newly discovered evidence. (Dckt. #377 at 2); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996). "A manifest error of law or fact under this standard occurs when a district court 'has patently misunderstood a party, or has made a decision outside the adversarial issues to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Patrick v. City of Chicago,* 103 F.Supp.3d 907, 912 (N.D.Ill. 2015), *quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Furthermore, "[a] party asserting such an error bears a heavy burden," (*Id.*), and "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale,* 90 F.3d at 1270 (citing cases).

Matthew asserts that this Court made a "manifest error of fact" by finding that he was disabled for purposes of his motion for a protective order based, in part, on conditions that he has not been diagnosed with. Matthew further asserts that the Court made a "manifest error of law" by holding as a matter of law that defendants do not have a duty under the Americans with Disabilities Act to accommodate his disabilities by taking his deposition with written questions. As shown below, he has failed to demonstrate a "manifest" error of fact or any error of law.

**A.    The Court's mistaken finding that Matthew had four disabling conditions rather than only two such conditions was not a manifest error of fact**

In its Memorandum Opinion and Order, this Court noted that Matthew has been diagnosed with autism, major depressive disorder, a mood disorder, and attention deficit/hyperactivity disorder in reliance on an Illinois State Board of Education "Impartial Due Process Hearing Decision" that plaintiffs redacted to conceal the name of the student involved and attached as Exhibit B to the Fifth Amended Complaint.  (Dckt. #376 at 2).  The Court presumed that this ISBE decision concerned Matthew since Matthew is the only disabled plaintiff who is a party to this case and the sole paragraph of the Fifth Amended Complaint that cites Exhibit B mentions only Matthew and alleges that *he* "was denied FAPE as a result of Defendants' wide spread custom, policy or pattern of procedural and substantive violations of IDEA." (Dckt. #235 at 27 ¶97).  To his credit, Matthew admits that "it is not surprising" that the Court thought that Exhibit B concerned him.  (Dckt. #377 at 3).

However, Matthew now clarifies that plaintiffs attached this ISBE decision to their complaint even though it concerns a *different* unidentified student who does not have a case pending before this Court.  Why plaintiffs would attach an ISBE decision that did not pertain to Matthew to their complaint, particularly without making it clear that the decision did not pertain to Matthew, is hard to understand and arguably inappropriate.  Matthew asserts that the decision is "evidence" of defendant Saint Charles Community Unit School District #303's pattern and practice of denial of appropriate accommodations but parties need not attach evidence to their complaint in federal court, particularly where - - as here - - that evidence does not concern them. As it turns out, the student that was involved in the Exhibit B decision shares two diagnoses in

common with Matthew (namely, autism and a major depressive disorder) but has two other conditions that Matthew has not been diagnosed with (mood disorder and attention deficit/hyperactivity disorder).

Matthew acknowledges that the Court correctly recognized that he has autism and was diagnosed with a depressive disorder but criticizes the Court for indicating that he has also been diagnosed with mood disorder and attention deficit/hyperactivity disorder. (Dckt. #377 at 2). The Court regrets the confusion that resulted in it finding that Matthew was disabled by two conditions that he was never diagnosed with. Nonetheless, the Court did correctly recognize that Matthew has been diagnosed with autism and depressive disorder *and* it did conclude that Matthew was disabled for purposes of his motion for a protective order. For these reasons, the Court's mistaken finding that Matthew had four disabling conditions when in fact he has only two such conditions was immaterial to the disposition of the motion and is far from the type of "manifest" error of fact needed to warrant reconsideration.

The Court further notes that Matthew's suggestion that the Court did not properly assess the documentation that he presented concerning his disabilities (*see* Dckt. #377 at 3-5), is incorrect. The Court did consider *all* of the documentation - - including the materials from psychologist Dr. Brian Post - - that Matthew submitted concerning his disabilities (Dckt. #376 at 6-7), but it concluded that this documentation failed to meet Matthew's burden of establishing that good cause currently exists to excuse him from an oral deposition because such a deposition would be dangerous to his health. (*Id.,* at 7-8). To reiterate, the most recent medical evidence that Matthew presented - - a July 17, 2019 letter from Dr. Post - - did not even address Matthew's ability to sit for an oral deposition or opine that he would suffer any harm if he were deposed. (*Id.,* at 7). Furthermore, if anything, Dr. Post's sworn testimony during his January 10,

2020 deposition tends to undercut Matthew's assertion that he has difficulties with oral communications. In particular, Dr. Post testified that Matthew was fully capable of communicating his thoughts, anxieties, and struggles during their multiple one-on-one therapy sessions. (Dckt. #341-5 at 4-6).

**B.** **The Court's application of Federal Rule of Civil Procedure 26(c) to resolve Matthew's motion for a protective order was not a manifest error of law**

This Court relied in part on the Seventh Circuit's decision in *Shott v. Vedder Price, P.C.*, 527 Fed.Appx. 562 (7th Cir. 2013), for the proposition that the standards of Rule 26(c) - - and not Title III of the ADA - - controls the resolution of Matthew's motion for a protective order to force defendants to conduct his deposition by written questions. (Dckt. #376 at 4).[2] In his motion, Matthew argues that the Court's reliance on the non-precedential decision in *Shott* was a "manifest error of law" because the Seventh Circuit did not actually rule that the request for a protective order should be resolved under Rule 26(c). (Dckt. #377 at 8). Matthew further asserts that "the Seventh Circuit would not rule that [a] request for accommodations during a party's deposition[] is properly resolved under the standards of Rule 26(c) and not through a claim under the ADA because that would be inconsistent and not in harmony with the United States Department of Justice (DOJ) regulations, decisions/opinions or settlement agreements entered with various law offices for similar violations of [the] ADA." (*Id.*). Matthew's arguments are wrong for the following reasons.

---

[2] This Court also relied on Judge Alonso's prior direction to Matthew that he should seek a protective order under Rule 26(c) if he wanted to have his deposition taken by written question. (Dckt. #376 at 5).

1.      **The *Shott* decision reflects binding precedent in the Seventh Circuit**

First, the *Shott* decision is fully consistent with Seventh Circuit precedent regarding the interpretation of Title III of the ADA, 42 U.S.C. §12182(a).   As the *Shott* court held, in reliance on the Seventh Circuit's prior precedential decision in *Doe v. Mutual of Omaha Ins. Co.,* 179 F.3d 557 (7th Cir. 1999):

> A lawyer's office is a place of public accommodation, 42 U.S.C. §12181(7)(F), and thus Title III would forbid a legal office from excluding 'disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.'

*Shott,* 527 Fed.Appx. at 563, *quoting Doe,* 179 F.3d at 559.  This is the limited extent to which Title III of the ADA applies to the parties' dispute over how Matthew's deposition is to be conducted.  *See Doe,* 179 F.3d at 559 ("[t]he core meaning of this provision [Title III], plainly enough, is that the owner or operator [of a place of public accommodation] cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the non-disabled do").  Thus, this Court was entitled to rely on the *Shott* decision notwithstanding the fact that it is non-precedential because the Seventh Circuit offers useful guidance and its reasoning is persuasive.  *See, e.g., Passmore v. Josephson,* 376 F.Supp.3d 874, 882 n.3 (N.D.Ill. 2019) (relying on multiple non-precedential Seventh Circuit decisions where the "reasoning is persuasive"); *Clay v. Johnson,* No. 16-CV-05748, 2020 WL 1304628, at *2 n.1 (N.D.Ill. Mar. 19, 2020) (relying on non-precedential Seventh Circuit decisions where they provided "useful guidance").

2. **There is no indication that Congress intended for the ADA to override the Federal Rules of Civil Procedure regarding the conduct of discovery in federal cases**

Congress delegated to the Supreme Court the power to adopt rules of procedure for the federal district courts when it enacted the Rules Enabling Act, 28 U.S.C. §2072. *See* 28 U.S.C. §2072(a) ("[t]he Supreme Court shall have the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts"). Pursuant to that delegation, the Federal Rules of Civil Procedure control all proceedings in federal court. *See* Fed.R.Civ.P. 1 ("[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts"). "Nothing in the language of the ADA, in its legislative history, or in the case law interpreting it provides that the ADA is intended to supplant the Federal Rules of Civil Procedure" in terms of how to resolve a discovery dispute concerning a deposition. *Shott v. Vedder Price, P.C.,* No. 13 C 50030, Order at 4 (N.D.Ill. April 1, 2013) [hereinafter "*Shott* Order"], *aff'd,* 527 Fed.Appx. 562 (7th Cir. 2013); *Shott* Order, at 3 (characterizing the "where, when, and in what manner [a] deposition should be taken" as "a simple discovery dispute").

The district court in *Shott* further observed that "[p]laintiff has not cited, and this court is not aware of, any authority permitting a party to bypass the normal discovery rules that apply in all civil cases simply because she is disabled." *Shott* Order, at 4. The same is true here. Matthew has cited no decision where any court has held that the ADA supersedes the Federal Rules of Civil Procedure regarding the manner in which a party's deposition is to be conducted. For these reasons, the *Shott* district court held that the "discovery dispute" regarding plaintiff's deposition should be resolved by a motion for a protective order under Rule 26(c)(1)(B), and not

under the ADA.  *Shott* Order, at 4.  The Seventh Circuit agreed and affirmed.  *Shott,* 527

Fed.Appx. at 564 (citing to Rule 26(c)(1)(B)).[3]

### 3. This Court was not at liberty to disregard Judge Alonso's direction that Matthew should seek a protective order under the Federal Rules with respect to his deposition

Third, as noted above, Judge Alonso previously directed Matthew to seek a protective

order under the Federal Rules of Civil Procedure with respect to his desire to have his deposition

taken by written questions.  (Dckt. #331 at 1, 2).  Matthew does not address Judge Alonso's

ruling in his motion for reconsideration notwithstanding the fact that it was one basis for this

Court's decision.  (Dckt. #376 at 5).  This Court is not at liberty to simply disregard Judge

Alonso's ruling.  It is well-settled that "[t]he doctrine of law of the case precludes reexamining a

previous ruling (unless by a higher court) in the same case unless it was manifestly erroneous."

*Starcon Int'l, Inc. v. NLRB,* 450 F.3d 276, 278 (7th Cir. 2006); *United States v. Saporito,* No. 07-

CV-3169, 2011 WL 2473332, at *4 (N.D.Ill. June 22, 2011) (citing cases).  As explained in the

prior section, the conclusion that Rule 26(c) governs Matthew's request for a protective order

regarding the manner in which his deposition should be conducted is clearly correct and far from

erroneous, let alone manifestly erroneous.

---

[3] Matthew seeks to distinguish *Shott* on the ground that he did not - - unlike the plaintiff in *Shott* - - file a separate lawsuit to apply the ADA to resolve the discovery dispute concerning his deposition but instead seeks to apply the ADA to govern this discovery dispute within the confines of his existing lawsuit. (Dckt. #377 at 8).  This is a meaningless distinction.  The Seventh Circuit held that plaintiff Shott should have sought a protective order under Rule 26(c) in her existing lawsuit.  *Shott,* 527 Fed.Appx. at 564. Matthew - - as this Court has held - - should have done the same in this case.

4. **The settlements between the Department of Justice and certain private attorneys do not support Matthew's assertion that the ADA should govern the manner in which his deposition should be taken**

Matthew cites to settlement agreements negotiated by the Department of Justice in three cases where hearing disabled individuals filed complaints alleging that their own attorneys violated Title III of the ADA by failing to provide qualified sign language interpreters during communications between them and their attorneys.[4]  Matthew cites to these settlements and asserts "that the federal agency charged with investigating civil rights complaints consider request[s] for accommodations during depositions as question[s] to be resolved under [the] ADA [and] not Federal Rule[] of C.P. 26." (Dckt. #377 at 10.)  Matthew is incorrect because the settlements in these three cases provide no support whatsoever for his position.

First, the three settled cases did not concern a dispute over how the plaintiffs' depositions were to be conducted by defense counsel.  Instead, the hearing disabled plaintiffs alleged that: (a) their attorneys' law offices were "public accommodations" under Title III of the ADA; (b) Title III requires that a public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communications with individuals with disabilities (28 C.F.R. §36.303(c)(1)); (c) "auxiliary aids" include "qualified interpreters" (28 C.F.R. §36.303(b)(1)); and (d) the attorneys violated Title III by failing to provide "qualified interpreters" to ensure effective communications with their clients - - the hearing impaired plaintiffs.  In addition, the settlement agreements in two cases made no mention of depositions at all and in the third case

---

[4] A description of the facts underlying these cases can be found in the settlement agreements, which are available online and captioned as:   Settlement Agreement Under the Americans With Disabilities Act Between the United States of America and Joseph David Camacho, Esquire, Albuquerque, New Mexico, DOJ Complaint #202-49-37 (dated August 9, 2007); Settlement Agreement Under the Americans With Disabilities Act Between the United States of America and the Law Office of Cohen and Jaffe, LLC, DOJ Complaint #202-52-111 (dated June 30, 2006); and Settlement Agreement Under the Americans With Disabilities Act Between the United States of America and Gregg Tirone, Esq., DOJ Complaint #202-53-20 (dated January 5, 2004).

(Law Office of Cohen and Jaffe), the plaintiff alleged that her attorneys failed to adequately prepare her for her deposition but she made no allegations regarding the manner in which her deposition was conducted by opposing counsel. Consequently, contrary to Matthew's contention (Dckt. #377 at 10), these settlements provide no "indicia" that the Department of Justice believes that requests for accommodations in the manner in which depositions should be conducted should be resolved under the ADA rather than Federal Rule of Civil Procedure 26(c).

Second, Matthew does not stand in the same shoes as the plaintiffs in the three settled cases. He is not hearing impaired and he does not seek "auxiliary aids and services" within the meaning of the ADA. Moreover, even if Matthew were seeking an auxiliary aid or service, he is not the "client" of defense counsel. Consequently, unlike the attorneys in the settled cases, defense counsel will not be rendering services to Matthew within the confines of an attorney-client relationship. Furthermore, at least one court has held that defense counsel will not be rendering any "services" to Matthew within the meaning of the ADA when they take his deposition. *See Shott* Order, at 2 ("the taking of a deposition in this case does not qualify as a 'service' under the ADA because the accommodation requested lacks the necessary nexus to the physical site of the attorney's office. The ADA only makes the '*office* of an accountant or lawyer' a place of public accommodation, it does not mention the practice of law"). Finally, contrary to Matthew's assertion (Dckt. #377 at 20), the defense lawyers did articulate a legitimate reason for rejecting Matthew's request to be deposed by written questions. Defense counsel argued - - and this Court found (Dckt. #376 at 10-12) - - that a deposition by written questions would be inappropriate in this case for a number of reasons.

## CONCLUSION

For all of the above reasons, plaintiff Matthew Stanek's motion for reconsideration [377] is denied.

**ENTER:**

_/s/ Jeffrey I. Cummings_____
**Hon. Jeffrey Cummings**
**United States Magistrate Judge**

**DATE:  April 7, 2020.**